## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**LUIS FELIPE SIMON BROCHE,** )
)  Case No. _____
    Petitioner, )
)
v. )
)
)
**GARRETT RIPA,** Director of Miami )
Field Office, U.S. Immigration and Customs )
Enforcement; **TODD LYONS,** Acting )
Director U.S. Immigration and Customs )
Enforcement, **KRISTI NOEM,** Secretary )
of the U.S. Department of Homeland )
Security; and **PAMELA BONDI,** Attorney )
General of the United States, )
)
    Respondents. )
_____ )

## <u>VERIFIED PETITION FOR HABEAS CORPUS</u>

Luis Felipe Simon Broche petitions this Court for a Writ of Habeas Corpus, pursuant to 28 USC §2241 and the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, to remedy his continued unlawful detention by Respondents. Petitioner hereby requests that an immediate hearing be set on this matter. Petitioner also requests that he be released during the pendency of this Petition. In support of this Petition, Petitioner alleges as follows:

## Preliminary Statement

1.      Petitioner Luis Felipe Simon Broche is a 31-year-old native and citizen of Cuba. ("Simon Broche" or "Petitioner").

2.      At the time of this Petition, Simon Broche has been detained in the custody of Immigration and Customs Enforcement ("ICE") under the Government's expansion of expedited removal process.  Simon Broche has not had the opportunity to challenge his detention before a neutral decision-maker.

3.      Immigrants like Simon Broche have been showing up for routine immigration hearings, only to see their cases being tossed out of court and then promptly arrested and hauled off by ICE.[1]

4.      Just over a month ago, on August 29 – the United States District Court for the District of Columbia stayed the Government's expansion of this new and expanded expedited removal power it claims to have.  The Court ruled that the expansion likely violates Fifth Amendment Due Process rights when applied to

---

[1] "ICE made nearly 2400 arrests that likely took place in immigration court, analysis finds" CBS News, 10/8/25. https://www.cbsnews.com/news/ice-agents-new-york-city-immigration-courts-analysis/; *Anatomy of an Ice Arrest (in Immigration Court)*, New York Times, 8/3/25. *ICE Agents in Miami Fin New Spot to Carry Out Arrests: Immigration Court*, Miami Herald, https://www.miamiherald.com/news/local/immigration/article306900486.html; *Ice Has a New Courthouse Tactic: Get Immigrants Cases Tossed, Then Arrest them Outside,* Stateline, 8/6/25, https://stateline.org/2025/08/06/ice-has-a-new-courthouse-tactic-get-immigrants-cases-tossed-then-arrest-them-outside/

people living in the country's interior – *like Petitioner Simon-Broche*.  The Court held that such persons "have a weighty liberty interest in remaining here and therefore must be afforded due process," and that the Government's existing procedures "fall short" of constitutional requirements. See *Make the Road New York v. Noem*, 2025 WL 2494908, at *21(D.D.C. 2025)

5.      Quoting the United States Supreme Court in *A.A.R.P v. Trump*, the District Court captured the profound, constitutional danger the Government's position presents.  When the Government claims that those who entered illegally are entitled to no due process under our Constitution, it crosses from purported immigration enforcement into something far darker  -- where *all* are at risk:

> "In defending this skimpy process, the Government makes a truly startling argument: that those who entered the country illegally are entitled to no process under the Fifth Amendment, but instead must accept whatever grace Congress affords them. Were that right, not only noncitizens, but *everyone would be at risk*. The Government could accuse you of entering unlawfully, relegate you to a bare-bones proceeding where it would "prove" your unlawful entry, and then immediately remove you. By merely accusing you of entering unlawfully, the Government would deprive you of any meaningful opportunity to disprove its allegations. Fortunately, that is not the law. The Constitution guarantees that "no person shall be removed from the United States without opportunity, at some time, to be heard." That is equally true of those here unlawfully, who are "entitle[d] ... to due process of law in the context of removal proceedings."
>
> *Make the Road New York v. Noem*, 2025 WL 2494908, at *2 (D.D.C. Aug. 29, 2025) *quoting A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025) (emphasis added)

6.     In *Make the Road*, the District Court rejected the Government's misplaced use of *Trump v. Casa*[2] to limit the geographic impact of the Court's stay. *Casa* has nothing to do with stays on agency actions under Section 705 of the Administrative Procedure Act:

> One additional word on the Government's argument that, under *Trump v. CASA*, the Court's remedy should be limited to Make the Road's "members who the organization can identify as being affected by the challenged agency actions." The Court has previously explained why *CASA* does not apply to section 705 of the APA. *See Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872, 2025 WL 2192986, at *38 (D.D.C. Aug. 1, 2025)
>
> *Make the Road New York v. Noem*, 2025 WL 2576701 (D.C.C Sept 1, 2025)

Federal law holds that vacating or staying an agency action is not limited to just the plaintiffs before that court – full stop:

> (T)he D.C. Circuit has repeatedly held, vacatur of the agency action—not merely exempting plaintiffs from the agency action—is the normal remedy under APA section 706. Courts in this and other circuits have applied that same rule to section 705 stays. Those decisions track the text of section 705, which authorizes the reviewing court to "postpone the effective date of an agency action or preserve status or rights" *full stop*, *not only as to plaintiffs before the court*. (The Government) provide(s) no case in which a court has granted a section 705 stay only as to the plaintiffs, rather than as against the Government and its enforcement of the challenged agency action in general.
>
> (And) Justice Kavanaugh's concurrence highlighted that, even after *CASA*, "plaintiffs may ask a court to preliminarily 'set

---

[2] 145 S.Ct. 1364 (2025)

aside' a new agency rule" "in cases under the Administrative Procedure Act."

*Coalition for Humane Immigratn Rights v. Noem*, WL 2192986, *37-38. (D.C.C. Aug. 1, 2025) citing *Trump v. Casa, Inc.* 145 S.Ct. at 567 (Kavanaugh, J., concurring)[3]

7.     After fleeing the autocratic dictatorship in Cuba, Simon Broche entered the United States on May 16, 2022.  DHS officers apprehended and detained him. Thereafter, on May 17, 2022, DHS issued Simon Broche a Notice to Appear in immigration court for removal proceedings under 8 U.S.C. §1229a ("section 240 removal proceedings" under the Immigration and Nationality Act) and released him on his own recognizance.

8.     On October 4, 2022 ,Simon Broche filed a lawful and timely asylum application.

9.     On June 17, 2025, Simon Broche complied with the Notice to Appear. He dutifully appeared in immigration court -- as the Government directed him to do -- on June 17, 2025, with Counsel. But instead of processing his case, the Immigration Judge (IJ) dismissed Simon Broche's section 240 removal proceedings upon DHS's oral motion, and over Petitioner's opposition, placing him in the new

---

[3] Also citing *Career Colls. & Schs. of Tex. v. U. S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), *cert. granted in part sub nom. Dep't of Educ. v. Career Colls. & Schs. of Tex.*, —— U.S. – ——, 145 S. Ct. 1039, 220 L.Ed.2d 375 (2025); *Dist. of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d at 48; *Cabrera*, —— F.Supp.3d at ——, 2025 WL 2092026, at *8.

and *expanded* expedited removal process. Simon Broche reserved appeal. As for his asylum petition, that was, in essence, swept aside.

10.     Simon Broche and Counsel exited the courtroom where masked ICE agents, ambushed them. The agents provided no identification. No warrant.  They arrested Simon Broche by ambush in the hallway of a federal immigration courthouse.

11.     ICE then issued a Notice and Order of Expedited Removal ("NOER"), unlawfully subjecting Simon Broche to expedited removal proceedings.  Up to this point, Simon Broche had been living continuously and peacefully in the United States for over three years. He had, until the arrest by ambush, been lawfully placed in section 240 removal proceedings; had submitted a lawful asylum petition; and maintained significant equities in the United States.  These equities include a lawful permanent resident spouse and a U.S. citizen child.

15.     Since that ambush in the immigration courthouse, Simon Broche has remained detained in ICE custody at the Broward Transitional Center with limited access to his Counsel.  On August 06, 2025, ICE denied Simon Broche's request for release, stating that it was a decision by "upper management."

12.     Accordingly, to vindicate Simon Broche's statutory, Constitutional, and regulatory rights, this Court should grant the instant petition for a writ of habeas corpus.

13.     The attempted application of expedited removal against Simon Broche violates the Fifth Amendment's Due Process Clause and the Administrative Procedure Act, as found by the U.S. District Court for the District of Columbia in *Make the Road*, which stayed DHS from implementing the expansion of expedited removal to those living in the country's interior.

14.     Simon Broche asks this Court to find that he was unlawfully detained and order his release.

## Jurisdiction

15.     This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

17.     This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## Venue

16.     Venue is proper in this District because Simon Broche is detained within the jurisdiction of the Southern District of Florida at the Broward Transitional Center in Pompano Beach, which is within the District's jurisdiction.

## Requirements of 28 U.S.C. § 2243

17.     The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

18.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## Parties

19.     Simon Broche is a native and citizen of Cuba. Simon Broche is currently detained at the Broward Transitional Center in Pompano Beach, FL.  He is in custody, and under the direct control, of Respondents and their agents.

20.     Respondent Garrett Ripa is sued in his official capacity as the Director of the Miami Field Office of ICE. Respondent Rippa is a legal custodian of Petitioner and has authority to release him.

21.     Respondent Todd Lyons is sued in his official capacity as the Acting Director of ICE. In this capacity, Respondent Lyons is responsible for the implementation and enforcement of the "INA," and oversees ICE. Respondent Lyons is a legal custodian of Petitioner.

22.     Respondent Kristi Noem is sued in her official capacity as the Secretary of DHS. In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees ICE, the component agency responsible for Simon Broche's custody. Respondent Noem is a legal custodian of Petitioner.

23.     Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals ("BIA"). Respondent Bondi is a legal custodian of Petitioner.

## **Legal Framework**

24.     The Refugee Act of 1980, the cornerstone of the U.S. asylum system, provides a

right to apply for asylum to individuals seeking safe haven in the United States. The purpose of the Refugee Act is to enforce the "historic policy of the United States to

respond to the urgent needs of persons subject to persecution in their homelands." Refugee Act of 1980, § 101(a), Pub. L. No. 96-212, 94 Stat. 102 (1980).

25.     The "motivation for the enactment of the Refugee Act" was the United Nations Protocol Relating to the Status of Refugees, "to which the United States had been bound since 1968." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 424, 432-33 (1987). The Refugee Act reflects a legislative purpose "to give 'statutory meaning to our national commitment to human rights and humanitarian concerns.'" *Duran v. INS*, 756 F.2d 1338, 1340 n.2 (9th Cir. 1985).

26.     The Refugee Act established the right to apply for asylum in the United States and defines the standards for granting asylum. It is codified in various sections of the INA.

27.     The INA gives the Attorney General or the Secretary of Homeland Security discretion to grant asylum to noncitizens who satisfy the definition of "refugee." Under that definition, individuals generally are eligible for asylum if they have experienced past persecution or have a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion and if they are unable or unwilling to return to and avail themselves of the protection of their homeland because of that persecution of fear. 8 U.S.C. § 1101(a)(42)(A).

28.     Although a grant of asylum may be discretionary, the right to apply for asylum is not. The Refugee Act broadly affords a right to apply for asylum to any noncitizen "who is physically present in the United States or who arrives in the United States[.]" 8 U.S.C. § 1158(a)(1).

29.     Because of the life-or-death stakes, the statutory right to apply for asylum is robust. The right necessarily includes the right to counsel, at no expense to the government, see 8 U.S.C. § 1229a(b)(4)(A), § 1362, the right to notice of the right to counsel, see 8 U.S.C. § 1158(d)(4), and the right to access information in support of an application, see § 1158(b)(1)(B)(placing the burden on the applicant to present evidence to establish eligibility).

30.     Noncitizens seeking asylum are guaranteed Due Process under the Fifth Amendment to the U.S. Constitution. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

31.     Noncitizens who are applicants for asylum are entitled to a full hearing in immigration court before they can be removed from the United States. 8 U.S.C. § 1229a. Consistent with due process, noncitizens may seek administrative appellate review before the Board of Immigration Appeals of removal orders entered against them and judicial review in federal court upon a petition for review. 8 U.S.C. § 1252(a) *et seq*.

32.     In 1996, Congress created "expedited removal" as a truncated method for rapidly removing certain noncitizens from the United States with very few

procedural protections. 8 U.S.C. § 1225(b)(1). Because there are few procedural protections, expedited removal applies narrowly to only those noncitizens who are inadmissible to the United States because they engaged in fraud or misrepresentation to procure admission or other immigration benefits, 8 U.S.C. § 1182(a)(6)(C), or who are applicants for admission without required documentation, 8 U.S.C. § 1182(a)(7). No other person may be subjected to expedited removal. 8 C.F.R. § 235.3(b)(1), (b)(3).

33.     Noncitizens subjected to expedited removal are ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). That officer must determine whether the individual has been continuously present in the United States for less than two years; is a noncitizen; and is inadmissible because he or she has engaged in certain kinds of fraud or lacks valid entry documents "at the time of . . . application for admission." *See* 8 U.S.C. § 1225(b)(1)(A)(i), (iii) (citing 8 U.S.C. § 1182(a)(6)(C), (a)(7)).

34.     Otherwise, if the officer concludes that the individual is inadmissible under an applicable ground, the officer "shall," with simply the concurrence of a supervisor, 8 C.F.R. § 235.3(b)(7), order the individual removed "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

35.     Thus, a low-level DHS officer can order the removal of an individual who has been living in the United States with virtually no administrative process—just completion of cursory paperwork—based only on the officer's own conclusions that the individual has not been admitted or paroled, that the individual has not adequately shown the requisite continuous physical presence, and that the individual is inadmissible on one of the two specified grounds.

36.     Once a determination on inadmissibility is made, removal can occur rapidly, within twenty-four hours.

37.     Asylum is not an admission to the United States and an applicant for asylum, while they must be physically present in the United States to apply, need not apply for or seek admission to the United States. *Matter of V-X-,* 26 I&N Dec. 147 (BIA 2013).

38.     For those who fear return to their countries of origin, the expedited removal statute provides a limited additional screening. But the additional screening, to the extent it occurs, does not remotely approach the type of process and the rights available to asylum seekers receive in regular Section 240 removal proceedings. *See* 8 U.S.C. § 1229a.

39.     An expedited removal order comes with significant consequences beyond removal itself. Noncitizens who are issued expedited removal orders are subject to a five-year bar on admission to the United States unless they qualify for a

discretionary waiver. 8 U.S.C.§1182(a)(9)(A)(i); 8 C.F.R. § 212.2. Similarly, noncitizens issued expedited removal orders after having been found inadmissible based on misrepresentation are subject to a lifetime bar on

admission to the United States unless they are granted a discretionary exception or waiver. 8 U.S.C. § 1182(a)(6)(C).

40.     Expedited removal only applies to noncitizens who are inadmissible on one of two specified grounds: 8 U.S.C. § 1182(a)(6)(C), which applies to those who seek to procure immigration status or citizenship via fraud or false representations, or § 1182(a)(7), which applies to noncitizens who, "at the time of application for admission," fail to satisfy certain documentation requirements. 8 U.S.C. § 1225(b)(1)(A)(1). If DHS seeks to remove noncitizens based on other grounds, they must afford the noncitizen a full hearing before an immigration judge. *See* 8 C.F.R. § 235.3(b)(1), (3).

41.     In January 2025, the Government issued the 2025 Designation of Expedited Removal (hereinafter 2025 Designation), authorizing the DHS "to exercise the full scope of its statutory authority" in utilizing expedited removal. Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025). The 2025 Designation asserted the authority to apply expedited removal to non-citizens who are encountered anywhere in the United States more than 100 air

miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years." *Id.*

42.     After the 2025 Designation, Acting Secretary of DHS Benjamine Huffman issued guidance expanding "the scope of expedited removal to the statutory maximum under 8 U.S.C. § 1225(b)(l) which, as further explained in the notice, includes certain aliens who have not been continuously present in the United States for two years." Designating Aliens for Expedited Removal." Dep't of Homeland Sec., Memorandum from Acting Secretary Benjamine C. Huffman on Guidance Regarding How to Exercise Enforcement Discretion (Jan. 23, 2025), https://perma.cc/W3CL-SNDN (hereinafter Huffman Memorandum).

43.     Relevant in the instant case, the 2025 Designation and Huffman Memorandum fixed the maximum two-year years to be considered for expedited removal to the amount of time between entry and apprehension, despite what procedures or amount of time transpired after apprehension, including the release of a non-citizen and the imposition of section 240 removal proceedings.

44.     On August 29, 2025, District of Colombia District Court, in *Make the Road,* granted a preliminary injunction blocking Trump Administration's implementation of the expansion of expedited removal through the use of the 2025 Designation and the Huffman Memorandum finding that plaintiffs were likely to

succeed on the merits of their claim that such designation violates the Fifth Amendment Due Process Clause.

45.     Immigration detention should not be used as a punishment and should only be used when, under an individualized determination, a noncitizen is a flight risk because they are unlikely to appear for immigration court or a danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## Statement of Facts

46.     Simon Broche is a 31-year-old citizen of Cuba. He is married to a lawful permanent resident, father to a one-year-old US citizen child, had been continuously present in the United States for over three years prior to his initial apprehension and detention, and was a lawfully, gainfully employed taxpayer seeking asylum due to persecution in Cuba on account of his political opinion. Simon Broche has no criminal history, aside from citations and detention by Cuban authorities on account of his political opinion.

47.     Simon Broche entered the United States without inspection on May 16, 2022, and DHS promptly apprehended and detained him. DHS issued a Warrant for Arrest of Alien under INA § 236(a), 8 U.S.C. § 1226(a). Additionally, DHS issued a Notice to Appear ("NTA") dated May 17, 2022 with an initial master calendar

hearing date of June 17, 2025 and released Respondent on an Order of Release on Recognizance (I-220A).

48.     On June 21, 2023, Simon Broche filed an I-485 Application to Register Permanent Residence or Adjust Status ("Adjustment of Status") with U.S. Citizenship and Immigration Services ("USCIS") under the Cuban Adjustment Act ("CAA"). On August 28, 2023, USCIS Administratively Closed Petitioner's Adjustment of Status case.

49.     Simon Broche filed a timely I-589 asylum application, later renewed before the Immigration Court, received a valid employment authorization document, a valid Florida driver's license, was gainfully employed, and paid taxes.

50.     On June 17, 2025, at Petitioner's initial Master Calendar Hearing, DHS moved to dismiss his section 240 removal proceedings without prior notice and only articulating generalized changed circumstances. Over objection, the Immigration Judge ("IJ") granted the motion orally. Petitioner reserved appeal.

51.     Immediately after the hearing and upon leaving the courtroom, Simon Broche was ambushed forcibly detained by purported ICE officers in plainclothes, handcuffed in front of counsel, and served with a Notice of Expedited Removal. ("NOER")

52.     Simon Broche, through counsel, immediately requested a Credible Fear Determination with ICE Enforcement and Removal Operations (ERO). As of today's date, DHS has not yet conducted a Credible Fear Interview with Respondent.

53.     Simon Broche, through counsel, filed a Motion to Reconsider with the IJ on June 18, 2025.

54.     On June 23, 2025, the IJ issued a written order dismissing proceedings.

55.     On that same date, Simon Broche, through counsel, submitted a Pre-NTA Custody Redetermination Request.

56.     On June 25, 2025, Simon Broche, through counsel, appealed the order dismissing Petitioner's section 240 removal proceedings before the BIA. This appeal remains pending.

57.     On July 1, 2025, an IJ at Broward Transitional Center denied Simon Broche's custody redetermination, finding him subject to mandatory detention due to the issuance of the NOER after the dismissal of his section 240 removal proceedings, despite acknowledging the pending appeal of that dismissal. DHS counsel offered no substantive argument when asked to explain the legal basis for detention and appeared to rely solely on one document: the NOER.

58.     On August 06, 2025, ICE ERO denied Simon Broche's request for release stating that it was a decision by "upper management."

59.     On September 04, 2025, Simon Broche, through Counsel, filed a Motion to Remand before the BIA.

60.     On September 11, 2025, ICE ERO denied Simon Broche's renewed Request for Release.


## COUNT I
## Violation of Fifth Amendment Right to Due Process
## Procedural Due Process

Petitioner Simon Broche sues all Respondents, re-alleging paragraphs 1-60, and further alleges:

61.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

62.     Due process requires that government action be rational and non-arbitrary. *See U.S. v. Trimble*, 487 F.3d 752, 757 (9th Cir. 2007).

63.     While asylum is a discretionary benefit, the right to apply is not. 8 U.S.C. §1158(a)(1). Any noncitizen who is "physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . .

.), irrespective of such [noncitizen's] status, may apply for asylum." *Id.*

64.     Because the denial of the right to apply for asylum can result in serious harm or death, the statutory right to apply is robust and meaningful. It includes the right to legal representation, and notice of that right, see id. §§ 1229a(b)(4)(A), 1362, 1158(d)(4); the right to present evidence in support of asylum eligibility, see id. § 1158(b)(1)(B); the right to appeal an adverse decision to the Board of Immigration Appeals and to the federal circuit courts, see id. §§1229a(c)(5), 1252(b); and the right to request reopening or reconsideration of a decision determining removability, see id. § 1229a(c)(6)-(7).

65.     Expedited removal, in contrast, severely limits the availability of such rights. Interviews occur on an exceedingly fast timeline, review of a negative interview decision by an immigration judge must occur within seven days of the decision. See 8 C.F.R. § 1003.42.

66.     While there is a right to "consult" with an attorney or another person about the credible fear interview process, see 8 U.S.C. § 1225(b)(1)(B)(iv) and 8 C.F.R. §§ 208.30(d)(4), 235.3(b)(4)(i)(B), (ii), the consultation "shall not unreasonably delay the process." The consultant may be "present" during the interview but may only make a "statement" at the end of the interview if permitted by the asylum officer. 8 C.F.R. § 208.30(d)(4). The immigrant subject to expedited removal may present evidence "if available", *id*.—often an impossibility given the

fast timeline and the default of detention during the process. *See generally* Heidi Altman, et. al., *Seeking Safety from Darkness: Recommendations to the Biden Administration to Safeguard Asylum Rights in CBP Custody*, Nov. 21, 2024, https://www.nilc.org/wpcontent/uploads/2024/11/NILC_CBP-Black-Hole-Report_112124.pdf (describing the obstruction of access to counsel for people undergoing credible fear screenings in Customs and Border Protection custody).

67.     Review of a negative credible fear decision by an immigration judge is limited. "A credible fear review is not as exhaustive or in-depth as an asylum hearing in removal proceedings," and there is no right to submit evidence, as it may be admitted only at "the discretion of the immigration judge." Immigration Court Practice Manual, Chpt. 7.4(d)(4)(E). After denial of a credible fear interview and affirmance by a judge, removal is a near certainty; the immigrant is ineligible for other forms of relief from removal.

68.     In sum, applying for asylum in removal proceedings comes with a panoply of greater protections when compared with seeking asylum in expedited removal. *See Immigrant Defenders Law Center v. Mayorkas*, 2023 WL 3149243, at *29 (C.D. Cal. Mar. 15, 2023) ("Individuals in regular removal proceedings enjoy far more robust due process protections [than those in expedited removal] because Congress has conferred additional statutory rights on them.").

69.     Here, neither Simon Broche nor his counsel were advised by DHS that

they sought to terminate his proceedings in order to place him in expedited removal, but rather because there had been a generalized "change in circumstances," depriving him of the bundle of rights associated with his pending asylum application. Because of his legal interest in his pending asylum application, this violated due process. *See generally Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (requiring notice and an opportunity to be heard before deprivation of a legally protected interest).

70.     As the DC Circuit court held, individuals residing in the interior of the United States, such as Petitioner, have a weighty liberty interest that cannot be extinguished by truncated expedited removal procedures. *Make the Road New York v. Noem, et al*, No. 1:2025cv00190 - Document 64 (D.D.C. 2025).

71.     Under 28 USCA § 2241(c)(3), a habeas relief must be granted

## COUNT II
### Violation of the Administrative Procedure Act – 5 U.S.C. § 706(2)(A)
### Not in Accordance with Law and in Excess of Statutory Authority
### <u>Unlawful Detention</u>

Petitioner Simon Broche sues all Respondents, re-alleging paragraphs 1-60, and further alleges:

72.     Under the APA, a court shall "hold unlawful and set aside agency action" that is an abuse of discretion. 5 U.S.C. § 706(2)(A).

73.     An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)).

74.     To survive an APA challenge, the agency must articulate "a satisfactory explanation" for its action, "including a rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (citation omitted).

75.     By categorically revoking Simon Broche's release, Respondents have violated the APA.

76.     Respondents have made no finding that Simon Broche is a danger to the community.

77.     Respondents have made no finding that Simon Broche is a flight risk because, in fact, he was arrested while appearing at his immigration proceedings.

78.     By detaining the Petitioner categorically, Respondents have further abused their discretion because there have been no changes to his facts or

circumstances since the agency made its initial custody determinations that support the revocation of his release from custody.

79.     Respondents have already considered Simon Broche's facts and circumstances and determined that he was not a flight risk or danger to the community. There have been no derogatory changes to the facts that justify this revocation of his release on her own recognizance. Quite the contrary, since his initial detention and re-detention over three years after this subsequent detention, Simon Broche has established greater community ties including lawful employment and the birth of a US citizen child. The fact that Simon Broche has already been granted release by Respondents under the weaker facts and circumstances shows that Respondents do not consider him, on an individualized basis, to be a danger to the community or a flight risk. Moreover, Simon Broche appeared for his immigration court hearing as required which cannot be a basis to find that he is a flight risk.

**Count III**
**Violation of Fifth Amendment Right to Due Process**
**<u>Illegal Retroactive Application of Expedited Removal Designation</u>**

Petitioner Simon Broche sues all Respondents, re-alleging paragraphs 1-60, and further alleges:

80.     Administrative rules "will not be construed to have retroactive effect unless their language requires this result." *Landgraf v. USI Film Products*, 511 U.S.

244, 272 (1994). When a "new provision attaches new legal consequences to events completed before its enactment" the new provision is not retroactive unless it is unmistakably clear.

81. Applying the January 2025 expedited removal designation to Petitioner's May 2022 entry to the United States to seek asylum would attach new legal consequences including the loss of significant rights related to his right to seek asylum.

82. The January 2025 designation does not unmistakably apply to individuals who

entered the United States prior to its effective date.

83. Accordingly, Respondents are attempting to unlawfully subject him to expedited removal. *Make the Road New York v. Noem, et al*, No. 1:2025cv00190 - Document 64 (D.D.C. 2025).

**COUNT IV**
**Violation of the Administrative Procedure Act – 5 U.S.C. § 706(2)(A)**
**Not in Accordance with Law and in Excess of Statutory Authority**
**<u>Violation of 8 C.F.R. § 239.2(c)</u>**

Petitioner Simon Broche sues all Respondents, re-alleging paragraphs 1-60, and further alleges:

84. Under the Administrative Procedure Act ("APA") , a court "shall . . . hold unlawful . . . agency action" that is "not inaccordance with law;" "contrary to

constitutional right;" "in excess of statutory jurisdiction, authority, or limitations;" or "without observance of procedure required by law." 5 U.S.C. §706(2)(A)-(D).

85.    Once a removal proceeding has been initiated, regulations allow for the proceedings to be dismissed for a reason set forth at 8 C.F.R. § 239.2(a).

86.    The initiation of expedited removal proceedings is not an enumerated ground

upon which a removal proceeding may be dismissed.

87.    It is a well-established administrative principle that "agency action taken without lawful authority is at least voidable, if not void ab initio." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 35 (D.D.C. 2020), citing *SW General, Inc. v. NLRB*, 796 F.3d 67, 79 (D.C. Cir. 2015); s*ee also Hooks v. Kitsap Tenant Support Servs., Inc.,* 816 F.3d 550, 555 (9th Cir. 2016) (invalidating agency action because it was taken by unauthorized official).

88.    On information and belief, Respondents have dismissed Petitioner's removal proceedings because of their intent to eliminate the due process rights available to Simon Broche in removal proceedings under 8 U.S.C. § 1229a, and as supporting by the Respondents' issuance of a NOER.

89.    Because Simon Broche's dismissal of section 240 removal proceedings was not made in furtherance of an enumerated reason set forth in the regulations, Respondents' use of the January 2025 expedited removal designation is unlawful.

## COUNT V
### Violation of Fifth Amendment Right to Due Process
#### Procedural Due Process

Petitioner Simon Broche sues all Respondents, re-alleging paragraphs 1-60, and further alleges:

90.   The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

91.   Due process requires that government action be rational and non-arbitrary. *See U.S. v. Trimble*, 487 F.3d 752, 757 (9th Cir. 2007).

92.   While the government has discretion to detain individuals under 8 U.S.C. § 1226(a) and to revoke custody decisions under 8 U.S.C. § 1226(b), this discretion is not "unlimited" and must comport with constitutional due process. *See Zadvydas*, 533 U.S. at 698.

93.   Here, Respondents have chosen to re-detain Simon Broche after initially releasing him in an arbitrary manner and not based on a rational and individualized determination of whether he is a safety or flight risk, in violation of due process. Because no individualized custody revocation or re-detention decision

has been made and no circumstances have changed to make Simon Broche a flight risk or a danger to the community, just merely that he is subject to mandatory detention due to the NOER and decisions from "upper management," Respondents' have violated his right to procedural due process.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioners Simon Broche respectfully requests this Court to grant the following:

(1)  Assume jurisdiction over this matter;

(2)  Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(3)  Declare that Petitioner's re-detention without an individualized determination violates the Due Process Clause of the Fifth Amendment;

(4)  Issue a Writ of Habeas Corpus ordering Respondents to release Simon Broche from custody.

(5)  Issue an Order prohibiting the Respondents from transferring Simon Broche from the district without the court's approval;

(6)  Award Simon Broche attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(7)  Grant any further relief this Court deems just and proper.

Dated: October 13, 2025       Respectfully submitted,

/s/ *Laura F. Kelley*       /s/ *H.K. Skip Pita*
Laura F. Kelley       H.K. Skip Pita
Florida Bar # 122047       Florida Bar # 0101974
LFK Immigration PA       PITA WEBER DEL PRADO
8200 NW 41st Street       9350 South Dixie Highway
Suite 200       Suite 1200
Doral, Florida 33166       Miami, Florida 33156

*Attorneys for Petitioner*       *Attorneys for Petitioner*

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Luis Simon Broche, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 13th day of October, 2025.

/s/ *Laura F. Kelley*
LAURA F. KELLEY
LFK Immigration PA
8200 NW 41st St. Ste 200
Doral, FL 33166
*Attorneys for Petitioner*